DECISION
{¶ 1} Plaintiffs-appellants, John and Paula Brothers, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Morrone-O'Keefe Development Company, LLC, on plaintiffs' claims of fraud, fraudulent misrepresentation and negligent misrepresentation in connection with plaintiffs' purchase of a residential lot in the Marble Cliff Crossing ("Marble Cliff") subdivision located in Columbus, Ohio. Plaintiffs advance a single assignment of error, as follows:
The trial court erred in granting summary judgment to Appellee on Appellants' claims of fraud and misrepresentation.
 {¶ 2} Defendant is the developer of the Marble Cliff subdivision. Development of the subdivision, which began in the mid-1990's, has been carried out in three separate phases. In 1998, the sanitary sewer system was installed in the development. Defendant granted the city of Columbus ("city") a sanitary sewer easement across the rear of several of the lots in Phase II.
 {¶ 3} In April 2000, plaintiffs met with Joseph Morrone, one of the developers, to discuss the possibility of constructing a home in the development. Plaintiffs informed Morrone that they were interested in duplicating a home that had been built for their friends in Phase I, with the exception that plaintiffs wanted to add a third garage bay. Morrone indicated that he was familiar with the home plaintiffs wished to build.
 {¶ 4} In early May 2000, plaintiffs met with Morrone to tour Phase II. Because Phase II was in the early stages of development, none of the lots were staked; however, Morrone described to plaintiffs how the lots would lie. Plaintiffs emphasized that they were interested in purchasing a lot only if the lot was large enough to accommodate the home they intended to build. Morrone assured them that Lots 90, 91, and 92 would accommodate the home, including the three-car garage. During the tour, plaintiffs inquired about a pipe that emptied into a lake situated between Lots 90 and 91. Morrone responded that a storm-sewer easement held by the city ran between the two lots and emptied into the lake. Morrone did not, however, disclose that the sanitary sewer easement encumbered the back portion of many of the lots in Phase II.
 {¶ 5} On May 9, 2000, Morrone facsimiled a tentative plat drawing for Phase II to plaintiffs. In early June 2000, plaintiffs told Morrone that they were interested in purchasing Lot 90. Morrone informed them that CareFree Custom Homes ("CareFree") owned by Gary Wallace, had an option to build on Lot 90.
 {¶ 6} On June 20, 2000, Morrone presented a Lot Purchase Agreement ("agreement") to plaintiffs for their signature. Because the city had not yet approved the plat drawings for Phase II, plaintiffs did not execute the agreement immediately. Prior to signing the agreement, plaintiffs obtained copies of construction plans for their intended home from their friends and provided copies to both Wallace and Morrone. Plaintiffs ultimately executed the agreement on July 11, 2000. Pursuant to the terms of the agreement, plaintiffs agreed to pay $160,000 for Lot 90. The purchase agreement contained a provision stating that "[b]uyers have examined all property involved and, in entering into this Agreement, are relying solely upon such examination with reference to the condition, character and size of the land and improvements and fixtures, if any." The agreement also contained an integration clause, which stated that "[t]his agreement fully and completely sets forth the agreement between the parties and all previous understandings and agreements between the parties with respect to the subject matter of this agreement are merged herein. This agreement may not be changed or terminated orally." Plaintiffs deposited $5,000 with defendant as a down payment on the lot purchase.
 {¶ 7} Sometime in September 2000, plaintiffs received a set of construction plans that had been prepared by a construction engineering firm hired by Wallace. The plans showed the sanitary sewer easement running across the rear of Lot 90. Plaintiffs reviewed the plans and assumed, based upon prior representations from both Morrone and Wallace that, notwithstanding the easement, Lot 90 would accommodate the home they wished to build.
 {¶ 8} Plaintiffs closed on the purchase of Lot 90 on October 9, 2000, paying the balance of the purchase price, $155,189, which included $189 in settlement costs. At the closing, plaintiffs reviewed the latest construction plans with both Morrone and Wallace. From these plans, it appeared that plaintiffs' house could be built on Lot 90 without encroaching on the sanitary sewer easement. After closing on the lot purchase, plaintiffs immediately, by quit claim deed, transferred title to CareFree so that CareFree could secure construction financing. On the same day, plaintiffs entered into a contract with CareFree for the construction of the home to be built on Lot 90.
 {¶ 9} On October 20, 2000, Morrone and Wallace met with plaintiffs and informed them that plaintiffs' intended home would not fit on Lot 90 because the back section of the house would encroach on a portion of the sanitary sewer easement. Plaintffs were upset by this news because both Morrone and Wallace had assured them on several previous occasions that Lot 90 could accommodate the home plaintiffs wanted to build. Morrone suggested the possibility of exchanging Lot 90 for another lot in Phase II. Because CareFree already owned Lot 88 and plaintiffs had deeded Lot 90 to CareFree, the exchange appeared to plaintiffs to be a suitable solution to the problem. After Morrone and Wallace repeatedly assured plaintiffs that Lot 88 could accommodate plaintiffs' home without encroaching on the sanitary sewer easement, plaintiffs agreed to exchange lots. The verbal agreement to exchange Lot 90 for Lot 88 was never reduced to writing.
 {¶ 10} In mid-November 2000, plaintiffs and Morrone met at Lot 88 to discuss the latest set of construction plans, which showed support columns to be constructed in the middle of the back patio adjacent to the home's walk-out lower level. When questioned about the need for the support columns, Morrone explained that they were necessary to support the overhanging part of the house and were required to be placed in the middle of the patio to avoid the sanitary sewer easement upon which the upper part of the back segment of the house significantly encroached. Having previously experienced the sanitary sewer easement encroachment problem with regard to Lot 90, plaintiffs sought advice from their attorney. Thereafter, plaintiffs informed both Morrone and Wallace, by letter dated November 30, 2000, that the deal was off. Plaintiffs demanded from Morrone the return of the $160,189 paid for the purchase of Lot 90, and from Wallace, the return of the down payment made on construction of the home.
 {¶ 11} In response, Wallace contacted plaintiffs in December 2000, suggesting that he and Morrone might be able to persuade the city to release the portion of the sanitary sewer easement on Lot 88 upon which plaintiffs' home would encroach. To that end, Wallace forwarded to plaintiffs a December 27, 2000 letter from the city acknowledging receipt of Wallace's request that the city release the encroachment on Lot 88 in exchange for additional new easement areas on other lots in Phase II. In its letter, the city tentatively agreed to the release subject to the approval of city council, a process which the city noted could take several months.
 {¶ 12} By letter dated February 16, 2001, plaintiffs notified Wallace and defendant that they declined to accept the verbal offer to build their home on Lot 88. Plaintiffs noted that they had repeatedly stated that they considered the construction contract void due to the problem with the home not fitting on Lot 90 and that if Wallace chose to proceed with construction on Lot 88, such construction would be on a speculative basis.
 {¶ 13} After plaintiffs' repeated demands for return of the $160,189 purchase price for Lot 90 went unresolved, plaintiffs filed a complaint against defendant on July 10, 2001, asserting four causes of action: fraudulent misrepresentation, negligent misrepresentation, mutual mistake and fraud. The crux of plaintiffs' complaint alleged that defendant, aware of both the dimensions of the proposed home and the location of the sanitary sewer easement on Lots 90 and 88, knowingly misrepresented that Lots 90 and 88 could accommodate the home and that plaintiff relied upon such misrepresentations in purchasing Lot 90 and in subsequently agreeing to exchange Lot 90 for Lot 88.
 {¶ 14} On December 13, 2002, defendant moved for summary judgment on plaintiffs' claims of fraud, fraudulent misrepresentation, and negligent misrepresentation. Defendant denied making representations regarding the suitability of Lots 90 and 88 for plaintiffs' intended home. Further, defendant contended that even assuming the facts as alleged in plaintiffs' complaint were true, plaintiffs could not prevail on their claims because the parol evidence rule prohibited oral representations which contradicted the terms of the parties' fully integrated written agreement. Defendant argued, alternatively, that plaintiffs' reliance on any alleged representations made by defendant was unreasonable as a matter of law.
 {¶ 15} After an oral hearing, the trial court granted defendant's motion for summary judgment by decision and entry dated January 28, 2003. The court determined that the parol evidence rule barred plaintiffs from modifying the terms of the written agreement with Morrone's alleged prior oral representations that plaintiffs' intended home would fit on Lot 90. In particular, the trial court held that "the house in question is certainly within the scope of the contract and since it was not included into the integrated contract — that contract cannot now be [modified] with parole [sic] evidence." (Jan. 28, 2003 Decision and Entry, at 2.) Plaintiffs moved the trial court to reconsider its decision, or, in the alternative, to issue a nunc pro tunc entry finding no just reason for delay, as the trial court's judgment did not resolve plaintiffs' pending claim of mutual mistake. On February 10, 2003, the trial court issued a nunc pro tunc decision and entry granting defendant's motion for summary judgment as to plaintiffs' claims of fraud, fraudulent misrepresentation and negligent misrepresentation and finding no just reason for delay. After filing a timely notice of appeal, plaintiffs voluntarily dismissed their claim for mutual mistake pursuant to Civ.R. 41(A).
 {¶ 16} Appellate review of summary judgment proceedings is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158,162. In reviewing a summary judgment disposition, an appellate court conducts an independent review of the record and stands in the shoes of the trial court. Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100,103. Accordingly, an appellate court must review the standard for summary judgment set forth in Civ.R. 56, as well as the applicable law.
 {¶ 17} Civ.R. 56(C) provides, in pertinent part:
Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *
 {¶ 18} Pursuant to this rule, the party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates that the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280,293. It is upon this standard that we review plaintiffs' assignment of error.
 {¶ 19} In support of their assignment of error, plaintiffs contend that the parol evidence rule is not applicable to exclude evidence of Morrone's alleged misrepresentations, that even if the parol evidence rule applies, application of the rule is not dispositive of their claims, and that their reliance on Morrone's misrepresentations was not unreasonable as a matter of law.
 {¶ 20} The parol evidence rule is a rule of substantive law intended to protect the integrity of final, written contracts. Ed Schory Sons, Inc. v. Society Natl. Bank (1996), 75 Ohio St.3d 433, 440. In general, the parol evidence rule provides that "`absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'"Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, quoting 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4. The parol evidence rule excludes extrinsic evidence "because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." Id., quoting In re Gaines' Estate (1940), 15 Cal.2d 255,264-265, 100 P.2d 1055, 1060. "If contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of the final agreement are generally excluded from consideration by the court."Bollinger, Inc. v. Mayerson (1996), 116 Ohio App.3d 702, 712, citingCharles A. Burton, Inc. v. Durkee (1952), 158 Ohio St. 313, paragraph two of the syllabus.
 {¶ 21} A party may, however, offer evidence of prior or contemporaneous representations to prove fraud in the execution or inducement of a contract. Galmish, at 28. "[I]t was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement which was obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his deception or chicanery." Id., quoting 37 American Jurisprudence 2d (1968) 621-622, Fraud and Deceit, Section 451. Contrary to defendant's contention, this principle does not lose its vitality merely because the considered written agreement contains an integration clause. Id.
 {¶ 22} The fraud exception to the parol evidence rule is not without limitation, however. Evidence of a collateral oral agreement is admissible only if it does not conflict with the written agreement and covers a subject matter distinct from, though closely related to, the express subject matter of the written agreement and is not included in the agreement. Bollinger, at 712. "Parties may not prove fraud by claiming that the inducement to enter into an agreement was a promise that was within the scope of the integrated agreement but was ultimately not included in it." Id.
 {¶ 23} Thus, at issue in the instant case is whether Morrone's alleged misrepresentations that plaintiffs' intended home would fit on Lot 90, and later, on Lot 88, were within the scope of the lot purchase agreement. For the following reasons, we conclude that the alleged misrepresentations were not within the scope of the agreement.
 {¶ 24} Nothing in the agreement at issue references construction of a home. The contract is for the purchase of the lot only. In Galmish, the court stated that "[u]nless the false promise is either independent of or consistent with the written instrument, evidence thereof is inadmissible." Id. at 30. Here, the false promise, that is, that plaintiffs' intended home would fit on Lot 90 and later, on Lot 88, is independent of the agreement. In other words, Morrone's representations regarding plaintiffs' home covers a subject matter distinct from, though closely related to, the express subject matter of the agreement, i.e., the lot. Bollinger, supra. Further, that promise does not conflict, nor is it inconsistent with, the portion of the agreement that states that plaintiffs were relying solely on their examination of the property with regard to the condition, character and size of the lot and improvements and fixtures. When plaintiffs agreed that they relied upon their examination of the property, they did so independent of defendant's promise. Nothing about the observable conditions, character or size of the lot inhibited the construction of plaintiffs' intended home. Rather, it is the existence and location of the sanitary sewer easement that interferes with the construction of the home.
 {¶ 25} Morrone, as one of the developers of the subdivision, was aware of the existence of the sanitary sewer easement and either knew or should have known where the easement was located on the property. Further, he was familiar with the size of the home plaintiffs intended to construct. Despite this knowledge, Morrone represented to plaintiffs that Lot 90 could accommodate the home. That promise is independent of the contract provision regarding plaintiffs' examination of the property.
 {¶ 26} The trial court erroneously characterized plaintiffs' purpose in seeking to introduce parol evidence as attempting "to modify the terms of the Lot Purchase Agreement by adding that Defendant told him orally prior to the lot agreement that a particular house would fit on Lot 90." (Jan. 28, 2003 Decision and Entry, at 2.) The evidence plaintiffs seek to present is not offered to contradict or modify the terms of the written contract but, rather, to demonstrate that plaintiffs were induced to purchase the lot based solely upon defendant's false representations.
 {¶ 27} In such circumstances, evidence of misrepresentation is admissible. In Drew v. Christopher Const. Co. (1942), 140 Ohio St. 1, the Ohio Supreme Court considered a situation in which a vendor's false promise regarding the sufficiency of a water supply was relied upon by the purchaser of a residence. The court held in the syllabus:
1. Where false representations of a vendor made as positive statements of fact clearly implying his knowledge of the truth thereof induced a purchaser to buy and pay for a residence property and such representations were material, being of such a nature as to affect the character, utility and value of the property, and were then known by the vendor to be untrue, but were relied upon by the purchaser as true, he may maintain an action to recover the damage sustained as a result thereof. Gleason v.Bell, 91 Ohio St. 268, 110 N.E. 513, approved and followed.
2. In an action for the recovery of damages based upon a claim of false representations in the sale of real estate, evidence is admissible not to contradict or vary the terms of the written contract of purchase and sale but to show material misrepresentations relative to the subject matter of the contract whereby the party was induced to enter into the contract which resulted in his loss or damage.
 {¶ 28} In this case, as in Drew, plaintiffs relied upon Morrone's false representations, made as positive statements of fact, clearly implying knowledge of the truth thereof, to induce plaintiffs to purchase the property, and such representations were material. Further, like the purchaser in Drew, plaintiffs seek to adduce evidence not to contradict or vary the terms of the written contract, but to show material misrepresentations relative to the subject matter of the contract whereby plaintiffs were induced to enter into the contract. Accordingly, the trial court erred in determining that evidence of defendant's misrepresentations regarding plaintiffs' proposed home fitting on Lot 90, and later on Lot 88, was inadmissible as violative of the parol evidence rule.
 {¶ 29} Assuming arguendo that the trial court correctly applied the parol evidence rule, application of the rule would mandate dismissal of plaintiffs' claims. As we have previously noted, the trial court determined that plaintiffs sought to modify the terms of the contract with evidence of Morrone's oral misrepresentations. However, as previously discussed, plaintiffs do not seek to modify the terms of the contract. Indeed, plaintiffs' complaint does not include a claim for breach of contract. Rather, plaintiffs' complaint sets forth claims for fraudulent misrepresentation, negligent misrepresentation and fraud. A review of the elements to be proven in each of these claims demonstrates that there is no need to modify the terms of the contract.
 {¶ 30} Fraudulent misrepresentation requires proof: (1) of representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness and to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Brewer v.Brothers (1992), 82 Ohio App.3d 148, 153.
 {¶ 31} Fraud is defined as: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Williams v. Aetna Fin. Co. (1998),83 Ohio St.3d 464, 475.
 {¶ 32} The elements of negligent misrepresentation are: (1) one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest; (2) supplies false information for the guidance of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information. Delman v. Cleveland Heights (1989),41 Ohio St.3d 1, 4.
 {¶ 33} None of the elements of the causes of action asserted by plaintiffs require modification of the terms of the contract. Thus, the trial court's determination that plaintiffs sought to use defendant's oral representations to modify the terms of the lot purchase agreement is misplaced. As such, plaintiffs should have been permitted to adduce evidence of misrepresentation for the purpose of proving the elements noted above notwithstanding the existence of the written agreement.
 {¶ 34} Further, the trial court's decision erroneously includes plaintiffs' claims with regard to Lot 88 in its analysis of the purchase contract for Lot 90. Plaintiffs claim fraud and misrepresentation not only with regard to Morrone's assurances that plaintiffs' intended home would fit on Lot 90, but also as to similar statements made in connection with Lot 88. However, the parties did not execute a separate written contract for the purchase of Lot 88. As such, there exists no written provisions or integration clause in connection with the parties' arrangement to substitute Lot 90 for Lot 88. Accordingly, the parol evidence rule cannot apply to Morrone's statements as to the proposed home fitting on Lot 88. Therefore, plaintiffs should have been permitted to adduce such evidence in support of their claims of fraud and misrepresentation as to Lot 88; therefore, summary judgment was inappropriate.
 {¶ 35} Finally, we note that in its motion for summary judgment, defendant argued that plaintiffs' reliance on Morrone's oral representations that their intended home would fit on Lots 90 and 88 was unreasonable as a matter of law. In particular, defendant contended that plaintiffs' failure to conduct their own investigation, including reviewing public records to determine the size and location of any easements, rendered their reliance on Morrone's oral representations unreasonable. Having determined that the parol evidence rule barred evidence of Morrone's statement, the trial court did not expressly address defendant's contention. However, a finding by the trial court suggests that the court tacitly approved defendant's argument. In particular, the court noted that plaintiffs were provided a copy of the plat map prior to signing the lot purchase agreement and that Mr. Brothers testified in his deposition both that he was informed that a storm sewer easement existed on Lot 90 and that he had a rudimentary knowledge of easements.
 {¶ 36} We readily acknowledge that a reasonably prudent buyer may well have questioned Morrone's representations and conducted their own investigation into the matter. Under Ohio law, a person is required to exercise proper vigilance in dealing with others and, at times, to reasonably investigate before relying on statements or representations. See Harrel v. Solt (Dec. 27, 2000), Pickaway App. No. 00CA027. Nevertheless, we cannot say, as a matter of law, that plaintiffs were not justified in relying on Morrone's representations. Given the particular facts and circumstances of the case, this question is one best left to the trier of fact to determine. See Crown Property Dev., Inc. v. OmegaOil Co. (1996), 113 Ohio App.3d 647, 657. "Reliance is justified if the representation does not appear unreasonable on its face and if, under the circumstances, there is no apparent reason to doubt the veracity of the representation." Id.
 {¶ 37} Plaintiffs' evidentiary materials demonstrate that Morrone was aware of the existence and location of the sanitary sewer easement. Further evidence indicates that prior to executing the agreement, plaintiffs informed Morrone that they intended to duplicate a home already constructed in the subdivision. Morrone indicated that he was familiar with the home and repeatedly assured them that such house would fit on either Lot 90 or Lot 88. Plaintiffs testified that because they had never before been involved in the construction of a new home, they relied on Morrone's expertise as a developer in determining whether Lots 90 and 88 could accommodate the home. Assuming all this to be true, as we must for purposes of summary judgment, plaintiffs were arguably misled into believing that Lots 90 and 88 could accommodate their intended home. Thus, sufficient evidence exists to survive a motion for summary judgment and present the fraud and misrepresentations claims to the trier of fact.
 {¶ 38} For the foregoing reasons, plaintiffs' assignment of error is sustained and the judgment of the Franklin County Court of Common Pleas is hereby reversed and remanded for further proceedings consistent with this opinion.
Judgment reversed and remanded.
Brown and Deshler, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.