[Cite as *Playland Park, Inc. v. Quality Mold, Inc.*, 2012-Ohio-1929.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

PLAYLAND PARK, INC.

    Appellee

    v.

QUALITY MOLD, INC.

    Appellant

    v.

STOUFFER REALTY, INC., ET AL.

    Appellees

C.A. No.     26039

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2010-08-5405

DECISION AND JOURNAL ENTRY

Dated: May 2, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1}    When the building across the street from its plant became available, Quality Mold Inc. thought it would be a convenient place to store its tire-mold models. It negotiated a five-year lease with the owner of the building, Playland Park Inc. After starting renovations, it learned that the property was zoned residential and that it would cost an extra $21,000 to obtain an occupancy permit. When Playland Park refused to reimburse it for the additional expenses, Quality Mold withheld its rent. Playland Park filed a complaint, seeking to evict Quality Mold and to recover the unpaid rent and its attorney fees. Quality Mold counterclaimed, alleging that Playland Park had guaranteed that the building could be used as a warehouse and had promised

to reimburse it for the additional expenses. It also made Playland Park's real estate agent, Yvonne Johnston, and her employer, Stouffer Realty Inc., parties to its claims. Playland Park, Ms. Johnston, and Stouffer Realty moved for summary judgment, arguing that they had not misled Quality Mold about the property's zoning and had not promised to reimburse it for the additional renovation costs. The trial court granted their motion. Following a trial on Playland Park's claims, the court ordered Quality Mold to pay Playland Park over $29,000 in unpaid rent and attorney's fees. Quality Mold has appealed, arguing that the trial court incorrectly granted summary judgment to Playland Park, Ms. Johnston, and Stouffer Realty and incorrectly awarded Playland Park its attorney's fees. We affirm because there is no evidence of a guarantee, fraud, or breach of contract and Playland Park was entitled to attorney's fees under the terms of the lease.

## BACKGROUND

**{¶2}** Quality Mold makes tire molds from plaster or plastic models. When it is not using a model, it stores it at an offsite location. In the fall of 2009, Quality Mold's management saw that a former roller-skating rink that is across the street from its plant was for sale. Mario Vargas, one of its plant managers, thought that the building would make a good place to store the company's models and asked Ms. Johnston if Playland Park would consider renting the building instead of selling it. According to Mr. Vargas, he told Ms. Johnston that Quality Mold wanted to use it as a storage warehouse. Playland Park's owners agreed to rent the building and entered into a lease, allowing Quality Mold to use the building "only and for no other purpose than warehousing and storing personal property . . . ."

**{¶3}** After signing the lease, Quality Mold hired a contractor to convert the building to its needs. When the contractor tried to obtain an occupancy permit, however, it learned that the

property was zoned residential and that, if Quality Mold wanted to use the building as a warehouse, it would have to do some additional renovations. According to Quality Mold, when it told Ms. Johnston about the extra costs, she told it to go ahead and do the work and that it would be reimbursed. Quality Mold, therefore, finished the renovations. When Playland Park refused to reimburse it, however, Quality Mold withheld its rent, leading to this action.

## SUMMARY JUDGMENT

{¶4} Quality Mold's first and second assignments of error are that the trial court incorrectly granted summary judgment to Playland Park, Ms. Johnston, and Stouffer Realty. It has argued that Playland Park and Ms. Johnston knew that the property was not zoned commercial, but drafted a lease providing that the building could only be used as a warehouse. It has also argued that Playland Park and Ms. Johnston promised to reimburse it for the additional costs associated with obtaining zoning code compliance.

{¶5} Quality Mold did not identify any specific causes of action in its counterclaim. From its allegations, it appears to have asserted breach of warranty, breach of contract, and fraud. Regarding breach of warranty, its argument appears to be that, by limiting its use of the building to "no other purpose than warehousing," Playland Park implicitly promised that the building could be used as a warehouse. In general, "[a] warranty is a promise by the seller that goods will conform to description and will be fit for the purpose for which they are sold." *State v. Cook*, 117 Ohio App. 3d 205, 207 (9th Dist. 1997).

{¶6} Upon review of the lease, we are unable to find any language that could be construed as a guarantee by Playland Park that its property was zoned for commercial use. To the contrary, the lease provides that "[Quality Mold] has examined the premises and has entered into this Lease without any representation on the part of the Landlord as to the condition thereof,

and agrees to accept the demised premises 'as is' . . . ." The language limiting the manner in which Quality Mold could use the property was placed in the lease for Playland Park's benefit. Accordingly, we refuse to construe it as a promise that Quality Mold would be able to use the property as a warehouse without incurring any additional expenses. The trial court correctly granted summary judgment to Playland Park, Ms. Johnston, and Stouffer Realty on Quality Mold's breach of warranty claim.

{¶7} Regarding its fraud claim, Quality Mold has alleged that it repeatedly told Ms. Johnston and Playland Park that it intended to use the building for warehousing and that they never warned it that the property was zoned residential. "The elements of fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Burr v. Stark County Bd. of Comm'rs*, 23 Ohio St. 3d 69, paragraph two of the syllabus (1986).

{¶8} Quality Mold has not established that Playland Park owed it a duty to disclose the property's zoning status. Furthermore, it has not established that it justifiably assumed that the property was zoned for warehouse use just because Ms. Johnston did not tell it otherwise. "An individual has no right to rely on a representation [or concealment] when the actual facts are equally open to both parties." *Takis L.L.C. v. C.D. Morelock Props., Inc.*, 180 Ohio App. 3d 243, 2008-Ohio-6676, at ¶ 30 (10th Dist.) (concluding that lessee could have independently inquired into the zoning requirements regarding the placement of signs); *Barna v. Paris*, 11th Dist. No. 99-L-084, 2000 WL 1458967 at *6 (Sept. 29, 2000). The city's zoning regulations are

public records that Quality Mold could have obtained, meaning it had at least constructive notice of them. *See Cumming v. City of Kettering*, 2d Dist. No. CA-4640, 1975 WL 181457 at *6 (June 19, 1975) (concluding that buyer of property had actual or constructive knowledge of applicable zoning restrictions); *Davis v. McPherson*, 132 N.E. 2d 626, 628 (9th Dist. 1955) (noting that trailer park developer had actual and constructive notice of township zoning resolution). *But see Lepera v. Fuson*, 83 Ohio App. 3d 17, 24 (1st Dist. 1992) (concluding that buyer could maintain fraudulent inducement claim against realtor when she continued to advertise house as a two-family residence after learning from village building inspector that it could only be used as a single-family residence). We, therefore, conclude that the trial court correctly granted summary judgment to Playland Park, Ms. Johnston, and Stouffer Realty on Quality Mold's fraud claim.

{¶9} Regarding Quality Mold's breach of contract claim, it has argued that Ms. Johnston told it that it would be reimbursed for the cost of complying with the city's zoning regulations. "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 2002-Ohio-2985, at ¶ 16 (quoting *Perlmuter Printing Co. v. Strome Inc.*, 436 F. Supp. 409, 414 (N.D. Ohio 1976)).

{¶10} Playland Park and Quality Mold signed the lease in October 2009. According to Quality Mold, in February 2010, Ms. Johnston told one of its owners that it would be reimbursed for the additional cost of complying with the zoning resolution. It has long been the rule in Ohio that "subsequent to the execution of a written contract, it is competent for the parties, by a new contract, . . . either to abandon, waive, or annul, the prior contract, or vary, or qualify the terms

of it, in any manner. . . . But where a written contract is thus either totally abandoned and annulled, or simply altered or modified in some of its terms, it is done, and can only be done, by a distinct and substantive contract between the parties, founded on some valid consideration." *Thurston v. Ludwig*, 6 Ohio St. 1, 5 (1856). "A valid consideration is an essential and indispensable element in every binding agreement. If a written contract be altered by verbal agreement, such agreement must have the essential ingredients of a binding contract; and although it may . . . embody the terms of the written contract, yet it must be founded on a new and distinct consideration of itself." *Id*. at 6. *But see* R.C. 1302.12(A) (Providing that "[a]n agreement modifying a contract within sections 1302.01 to 1302.98 . . . of the Revised Code, needs no consideration to be binding.").

{¶11} The contract at issue in this case did not involve goods under the Ohio Uniform Commercial Code, therefore, there had to be additional consideration for the alleged modification of the lease to be valid. According to the Ohio Supreme Court, "[c]onsideration may consist of either a detriment to the promisee or a benefit to the promisor. A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Lake Land Employment Group of Akron LLC v. Columber*, 101 Ohio St. 3d 242, 2004-Ohio-786 ¶ 16 (citations omitted) (citing *Irwin v. Lombard Univ.*, 56 Ohio St. 9, 19-20 (1897)).

{¶12} Quality Mold has not identified any additional benefit Playland Park received from its alleged promise to pay Quality Mold's zoning regulation compliance costs. We also have not been able to ascertain a benefit to Playland Park upon review of the record. Quality Mold had to pay Playland Park rent whether it used the building for storage or left it vacant. Quality Mold also did not suffer any additional detriment from the alleged amendment because it

had already assumed responsibility "to make all repairs on the building." Ms. Johnston's statement to Quality Mold's owner cannot be considered anything other than a "gratuitous promise" that is "not enforceable as [a] contract[ ], because there is no consideration." *Carlisle v. T & R Excavating Inc.*, 123 Ohio App. 3d 277, 283 (9th Dist. 1997). We, therefore, conclude that the trial court correctly granted summary judgment to Playland Park, Ms. Johnston, and Stouffer Realty on Quality Mold's breach of contract claim. Quality Mold's first and second assignments of error are overruled.

ATTORNEY'S FEES

{¶13} Quality Mold's third assignment of error is that the trial court incorrectly awarded attorney's fees to Playland Park. It has argued that, because Playland Park dismissed its forcible entry and detainer action at trial, it was not the prevailing party under the terms of the lease.

{¶14} The lease provides that, "[i]n the event that [Playland Park] institutes legal proceedings against [Quality Mold] for either eviction or for the collection of any rents or other charges due under this lease, [Quality Mold] agrees to pay [Playland Park's] expenses associated with such actions, including reasonable attorney's fees and court costs." Although Playland Park dismissed its claim for forcible entry and detainer, it prevailed on its claim "for unpaid rental[ ] and late charges . . . ." The trial court, therefore, correctly determined that it was entitled to reasonable attorney's fees.

{¶15} Quality Mold has argued that Playland Park was not entitled to attorney's fees under *Hagemeyer v. Sadowski*, 86 Ohio App. 3d 563 (1993). In *Hagemeyer*, Sherri Hagemeyer brought a personal injury action against Helen Sadowski, but settled with Ms. Sadowski on the morning of trial. Ms. Sadowski subsequently moved to have her deposition costs assessed to Ms. Hagemeyer. The Sixth District Court of Appeals concluded that Ms. Sadowski was not entitled

to the costs because she was not the prevailing party under Rule 54(D) of the Ohio Rules of Civil Procedure. *Id*. at 566-67.

{¶16} This case involves the assessment of attorney's fees under a written contract, not the assessment of costs under Civil Rule 54(D). In addition, Playland Park succeeded at trial on its claim for unpaid rent. We, therefore, conclude that *Hagemeyer* is distinguishable and that the trial court correctly awarded Playland Park reasonable attorney's fees. Quality Mold's third assignment of error is overruled.

## CONCLUSION

{¶17} The trial court correctly granted summary judgment to Playland Park, Ms. Johnston, and Stouffer Realty and correctly awarded Playland Park its attorney's fees. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 
_____
CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CONCURS.


BELFANCE, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶18} I concur in the judgment of the majority with respect to its conclusion that summary judgment was properly awarded with respect to Quality Mold's fraud claim. I note that at his deposition, Mr. Vargas from Quality Mold testified that he received a document that described the property for sale, which stated that the property was zoned residential. Thus, Quality Mold had notice of the status of the zoning from the inception of the transaction, a fact that undermines a claim of fraudulent concealment. Accordingly, I agree that the trial court properly awarded summary judgment to Playland Park, Stouffer Realty, and Ms. Johnston on Quality Mold's fraud claim.

{¶19} However, I respectfully dissent from the majority's conclusion that the trial court properly awarded summary judgment with respect to Quality Mold's claim for reimbursement. I note that Quality Mold's claim on this issue is vague; it is unclear if Quality Mold is asserting entitlement to reimbursement under a contract theory, an unjust enrichment theory, a promissory estoppel theory, or some other theory of recovery.

{¶20} The trial court concluded that summary judgment was properly awarded to Playland Park, Stouffer Realty, and Ms. Johnston on Quality Mold's claim for reimbursement because there was no evidence that anyone agreed to reimburse Quality Mold. Thus, the trial court did not need to specify or determine the theory of recovery under which Quality Mold was seeking reimbursement.

{¶21} However, contrary to the trial court's conclusion that no evidence was presented to support a claim of reimbursement, Quality Mold supplied an affidavit from Mr. Zoumberakis, the CEO of Quality Mold, who asserted that Ms. Johnston told him that Quality Mold would be reimbursed. Thus, the premise for the trial court's ruling is faulty. Moreover, in light of the fact that the trial court did not consider whether the evidence Quality Mold did present would entitle it to reimbursement under any theory, I would remand the matter to the trial court for it to consider the issue in the first instance. *See St. Croix, Ltd. v. Damitz*, 9th Dist. No. 25629, 25630, 2012-Ohio-1325, ¶ 18 ("[B]ecause the trial court based its ruling on a misunderstanding of the evidence properly before it, the matter must be remanded to the lower court for consideration of the competing motions for summary judgment with due regard for the evidence properly before it, as we decline to engage in consideration of the motions in the first instance.").

APPEARANCES:

CHRISTOPHER T. CHERPAS, Attorney at Law, for Appellant.

MARK A. ROPCHOCK, Attorney at Law, for Appellees.

ROBERT P. CAMPBELL, Attorney at Law, for Appellee.