TAKIS, L.L.C., et al., Appellants,

v.

C.D. MORELOCK PROPERTIES, INC., et al., Appellees.

[Cite as Takis, L.L.C. v. C.D. Morelock Properties,
Inc., 180 Ohio App.3d 243, 2008-Ohio-6676.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–675.

Decided Dec. 18, 2008.

</div>

244

Onda, LaBuhn, Rankin & Boggs Co., L.P.A., and Timothy S. Rankin, for appellants.

David A. Goldstein Co., L.P.A., David A. Goldstein, and Seth K. Kleinman, for appellees C.D. Morelock Properties, Inc., and C.D. Morelock.

---

BRYANT, Judge.

{¶ 1} Plaintiffs-appellants, Takis, L.L.C., Vicki Papadimitriou, and Dimitrious Papadimitriou, appeal from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 41(B)(2) motion to dismiss of defendants-appellees, Craig D. Morelock and C.D. Morelock Properties, Inc. ("Morelock Properties"), and awarding defendants damages in the amount of $4,444.60 on their counterclaims for breach of contract. Because the trial court erred in (1) not allowing plaintiffs a jury trial on defendants' counterclaims and (2) failing to weigh equitable considerations before concluding that defendants could terminate the lease due to plaintiffs' breaches of the lease, we reverse.

{¶ 2} On March 20, 2002, Spiro's, Inc. entered into a lease with Morelock Properties for the business premises located at 3140 Riverside Drive in Upper Arlington, Ohio. Pursuant to lease assignment provisions, Spiro's, Inc. subsequently assigned the lease to Takis, L.L.C., and its principals, Vicki and Dimitrious Papadimitriou. Plaintiffs intended to operate a restaurant on the premises, moving from their previous location because the city of Columbus exercised its eminent domain powers to take the land on which their restaurant had been located.

{¶ 3} Plaintiffs found the condition of the premises unsatisfactory at the outset of the lease. To assist with the necessary renovations, Morelock Properties informed plaintiffs that, at no cost to plaintiffs, James Nichols could prepare the plans for the interior remodeling. The plans were submitted to the city of Upper Arlington for approval, but were rejected because Nichols was not a certified architect. Although the parties dispute who hired him and directed his work, Doug Fisher, a certified architect, eventually was hired to prepare the drawings.

{¶ 4} On August 1, 2002, Upper Arlington issued a partial plan approval. Following Fisher's additional revisions, second and third partial plan approvals were issued on September 18 and October 30, 2002, with final approval issued on December 18, 2002. After each partial plan was approved, work proceeded on the restaurant renovations.

{¶ 5} Plaintiffs' prior location closed during October 2002; the new location opened in February 2003. When plaintiffs used the kitchen in the new premises for the first time, the kitchen fan was not powerful enough to exhaust the smoke

from the kitchen. Smoke filled the dining room, causing plaintiffs to purchase and install a more powerful fan.

{¶ 6} After the restaurant opened for business, friction between the parties surfaced. Disputes arose over morning deliveries, timely removal of holiday lighting, the placement of a grease dumpster outside the restaurant, and installation of a new heating, ventilating, and air conditioning ("HVAC") system. The parties experienced additional difficulties with the grease trap on the roof, tree removal, the hot-water heater, installation of a used compressor and a new walk-in cooler, wiring of a temporary sign, parking-lot repairs, and snow removal.

{¶ 7} On November 4, 2003, plaintiffs sent Morelock Properties a notice of default, informing Morelock Properties that it had violated three lease provisions. Plaintiffs contended that Morelock Properties had not provided a working and adequate HVAC system, failed to authorize an exterior sign conforming to city ordinances, and interfered with plaintiffs' right to quiet enjoyment of the premises. In addition, plaintiffs argued that Morelock Properties breached the implied covenant of good faith in failing to timely complete its portion of the cooler installation, not securing the building permit in a timely manner, and failing to timely inform plaintiffs of additional costs.

{¶ 8} Defendants, through counsel, replied by letter dated December 1, 2003, maintaining that the problems with the HVAC system resulted from plaintiffs' own actions. Denying the merits of plaintiffs' claims, defendants not only alleged that plaintiffs committed eight breaches of the lease but requested repayment for the expenses defendants incurred during the cooler installation. Defendants further sought reimbursement for snow removal and labor costs sustained while making improvements needed under the Americans with Disabilities Act ("ADA"). To support their reimbursement request, defendants noted that, apart from alterations to three entrance doors, Paragraph 85 of the lease made plaintiffs responsible for any changes needed to comply with the ADA.

{¶ 9} Despite further correspondence, the parties were unable to resolve their conflicts. Takis, L.L.C., ultimately filed a complaint against defendants on April 20, 2004, alleging fraud and willful breach of the lease; plaintiffs requested a jury trial. After some procedural sparring, plaintiffs filed their second amended complaint on May 26, 2005, adding Vicki and Dimitrious Papadimitriou as additional plaintiffs.

{¶ 10} Defendants answered and counterclaimed, demanding that plaintiffs be found in default of the lease. Defendants also requested an award of damages in the amount of $12,834.69 as reimbursement for costs defendants paid during remodeling efforts, as well as damages for defamation and libel, reimbursement for damage to the roof of the leased premises, termination of the lease, and late

fees, interest, costs, and attorney fees.   Defendants later waived portions of their counterclaim.

{¶ 11} Following discovery pursued by both parties, defendants moved for summary judgment on August 30, 2006; the trial court denied the motion on October 5, 2006.   After an intervening election occasioned a change in the trial judge, plaintiffs filed an election of remedies on January 3, 2007, requesting rescission of the lease.   By an order and entry filed March 30, 2007, the trial court denied plaintiffs' jury trial request.

{¶ 12} The matter proceeded to a bench trial beginning April 2, 2007.   After plaintiffs' presentation of evidence, defendants moved to dismiss pursuant to Civ.R. 41(B)(2).   Following oral arguments on the motion, the trial court granted defendants' motion on April 9, 2007.   In accord with plaintiffs' Civ.R. 52 request, the trial court filed findings of fact and conclusions of law on June 5, 2007.   Through a judgment entry filed July 24, 2007, the trial court awarded defendants damages in the amount of $4,444.60 on the nonwaived portions of their counterclaim and, finding plaintiffs in uncured breach of the lease, concluded that defendants could terminate the lease.

{¶ 13} Plaintiffs appeal, assigning five errors:

I.   The trial court erred in finding the appellees have a right to terminate the lease.

II.   The trial court erred in finding appellants breached an oral agreement with defendants.

III.   The court erred by denying appellant's request for a jury trial.

IV.   The trial court erred by granting appellees' motion to dismiss pursuant to Civil Rule 41(b)(2).

V.   The trial court erred by failing to allow parol evidence related to statements and representations made by appellees fraudulently inducing appellants to enter into the lease.

For ease of discussion, we begin with plaintiffs' first assignment of error but address the remaining assignments of error out of order.

## I.   First Assignment of Error

{¶ 14} Plaintiffs' first assignment of error contends that the trial court improperly disregarded the equitable law of real estate leases when, in ruling on defendants' counterclaim, it terminated the lease due to plaintiffs' minor lease violations and effected a forfeiture of the lease premises.   Appellants maintain that their breaches did not rise to the level of a material breach permitting defendants to terminate the lease.

{¶ 15} The trial court's decision found that "Defendants proved that Plaintiffs breached the Lease," but did not specify what breaches occurred. In its findings of fact, however, the trial court noted that defendants requested plaintiffs to remove (1) "a small police dumpster from a concrete pad pursuant to paragraph 4(E) of the Lease; (2) remove Christmas lights from the bombings and plantings pursuant to [paragraph] 62 of the Lease; (3) remove a sign LOCATED on the back door pursuant to paragraph 4(F) of the Lease." The trial court found that plaintiffs refused to comply with the request and, on that basis, determined that plaintiffs breached the lease, allowing defendants to terminate the lease.

{¶ 16} Plaintiffs concede that they breached the lease in the three ways the trial court designated, but they argue that the breaches do not constitute material breaches sufficient to terminate the lease. Characterizing the injury to defendants as "insignificant," plaintiffs maintain that the equities weigh against forfeiture. In support, plaintiffs claim that defendants could be adequately compensated for the breaches, the harm plaintiffs would suffer in the event of a forfeiture greatly outweighs the harm defendants suffered from the breaches, and plaintiffs have remedied the breaches. Plaintiffs contend that the trial court, in light of such considerations, wrongly failed to undertake a proper equity analysis and thus rendered an erroneous decision.

{¶ 17} In response, defendants contend that the trial court committed no error in determining defendants had a right to terminate the lease, as the "plain and ordinary language of the lease itself" permitted defendants to terminate the lease for any default that is uncorrected after ten days. Paragraph 17 of the lease, subtitled "Default By Tenant," requires plaintiffs to punctually and faithfully perform all the covenants of the lease. Upon "any default" by defendants "in the observance or performance of any of the other covenants, agreements, or conditions" of the lease, defendants may, at their option, terminate the lease.

{¶ 18} A forfeiture, or termination, clause in a lease must be strictly construed, and forfeiture should not be decreed in the absence of an express stipulation in the parties' lease agreement. *Equity Inns Partnership, L.P. v. Dae Kee Yun* (Oct. 28, 1999), Cuyahoga App. No. 74160, 1999 WL 980633, citing *Layne v. Baker* (1949), 86 Ohio App. 293, 41 O.O. 315, 91 N.E.2d 539; *Fairbanks v. Power Oil Co. of Ohio* (1945), 81 Ohio App. 116, 36 O.O. 418, 77 N.E.2d 499. Even when such a provision is incorporated into the lease, equitable considerations may weigh against concluding that a lessee's conduct should result in forfeiture of a leasehold interest. "When a party raises an equitable defense, it is the responsibility of the court to weigh the equitable considerations before imposing a forfeiture." *David v. Edwood Dev. Co.* (Jan. 12, 2000), Summit App. No. 19252, 2000 WL 46107, quoting *Gorsuch Homes, Inc. v. Wooten* (1992), 73 Ohio App.3d 426, 435, 597 N.E.2d 554. The responsibility exists even when, as

here, a party is in default of the lease. *Pepper Pike Properties Ltd. Partnership v. Wilson* (Jan. 31, 2002), Cuyahoga App. No. 79711, 2002 WL 199902, citing *Joseph J. Freed & Assoc., Inc. v. Cassinelli Apparel Corp.* (1986), 23 Ohio St.3d 94, 23 OBR 255, 491 N.E.2d 1109.

{¶ 19} Plaintiffs raised the issue of applying equitable considerations to plaintiffs' breaches of the lease, and the facts presented to the trial court warrant that consideration. Although each of plaintiffs' three breaches probably seemed significant to defendants in view of the parties' more or less consistent wrangling, the breaches appear to be relatively insignificant in the landscape of responsibilities spelled out in the lease. Moreover, plaintiffs invested significant amounts of money in preparing the premises for their restaurant, all of which would be forfeited under the trial court's strict application of the lease language. While we do not suggest the outcome of the process, the trial court should have weighed the equities to determine whether termination of the lease and the resulting forfeiture withstand equitable scrutiny. Because the trial court erred in failing to consider the equities of a forfeiture before ordering termination of the lease due to plaintiffs' breaches of lease provisions, we sustain plaintiffs' first assignment of error.

## II. Third Assignment of Error

{¶ 20} In their third assignment of error, plaintiffs contend that the trial court erred in denying them a jury trial. The trial court correctly ruled that plaintiffs were not entitled to a jury trial with regard to their claim seeking rescission of the lease, an equitable remedy. "The right to a jury trial is not absolute. Where a plaintiff seeks primarily equitable relief with attendant and incidental money damages neither party is entitled to a trial by jury." *Pyromatics, Inc. v. Petruziello* (1983), 7 Ohio App.3d 131, 134, 7 OBR 165, 454 N.E.2d 588. Nonetheless, as defendants properly concede, the trial court erred in denying plaintiffs a jury trial on defendants' counterclaim asserting various breach-of-contract claims. Because a breach-of-contract claim seeks legal relief, not equitable remedies, plaintiffs were entitled to a jury trial on the allegations of defendants' counterclaim. Plaintiffs' third assignment of error is overruled in part and sustained in part.

## III. Second Assignment of Error

{¶ 21} Plaintiffs' second assignment of error challenges the trial court's decision on at least part of defendants' counterclaim. Plaintiffs contend that the trial court erred in concluding they breached an oral agreement with defendants, asserting that "[t]he Trial Court did not indicate what evidence, testimony, or parts of the record it relied upon in finding the existence of an oral agreement or

concluding the [plaintiffs] breached the oral agreement." In resolving plaintiffs' third assignment of error, we determined that the trial court erred in not granting plaintiffs' request for a jury trial on defendants' counterclaim. Because a remand for a jury trial on the counterclaim is necessary, plaintiffs' second assignment of error is moot.

## IV. Fourth Assignment of Error

{¶ 22} Plaintiffs' fourth assignment of error contends that the trial erred in granting defendants' Civ.R. 41(B)(2) motion to dismiss. Piggybacking their third assignment of error, plaintiffs argue that the trial court's error in denying them a jury trial on defendants' counterclaim caused the trial court to wrongly apply the Civ.R. 41(B)(2) criteria to the allegations of their complaint rather than the standards for a directed verdict pursuant to Civ.R. 50(A)(4). As a result, plaintiffs contend, the trial court erroneously weighed the evidence in determining the merits of plaintiffs' evidence.

{¶ 23} Civ.R. 41(B)(2), captioned "Dismissal; non-jury action," states that "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant * * * may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." The trial court "as trier of the facts may then determine them and render judgment against the plaintiff." Id. Due to the nature of the equitable remedy plaintiffs sought in their complaint, they were not entitled to a jury trial on the allegations of their complaint. The trial court thus properly applied Civ.R. 41(B)(2) in determining whether to dismiss plaintiffs' complaint. Plaintiffs' fourth assignment of error is overruled.

## V. Fifth Assignment of Error

{¶ 24} Plaintiffs' final assignment of error contends that the trial court should have allowed plaintiffs to present, in support of their complaint for rescission, parol evidence related to statements and representations of defendant Craig Morelock. Plaintiffs argue that Morelock fraudulently induced them to enter into the lease by misrepresenting (1) that plaintiffs could install a sign in front of the restaurant to attract business and (2) the length of time it would take to complete remodeling the building. Although not expressly so stated, plaintiffs' assignment of error, at least in part, appears to challenge the merits of the trial court's decision to grant defendants' motion to dismiss.

{¶ 25} Generally, admission of parol evidence is barred if the parties have entered into a written agreement. Thus, "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contempora-

neous oral agreements, or prior written agreements." *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 27, 734 N.E.2d 782, quoting 11 Williston on Contracts (4th Ed.1999) 569–570, Section 33:4. Extrinsic evidence is excluded "because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." Id., quoting *In re Gaines' Estate* (1940), 15 Cal.2d 255, 264–265, 100 P.2d 1055. As a result, when contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, the court generally will exclude evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of the final agreement. *Bollinger, Inc. v. Mayerson* (1996), 116 Ohio App.3d 702, 712, 689 N.E.2d 62, citing *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265, paragraph two of the syllabus.

{¶ 26} While acknowledging the general rule, plaintiffs assert that the collateral-agreement rule, an exception to the parol evidence rule, should apply in this case. Pursuant to the exception, "[a] party may * * * offer evidence of prior or contemporaneous representations to prove fraud in the execution or inducement of a contract." *Brothers v. Morrone–O'Keefe Dev. Co.,* Franklin App. No. 03AP–119, 2003-Ohio-7036, 2003 WL 22999474, at ¶ 21, citing *Galmish,* 90 Ohio St.3d at 28, 734 N.E.2d 782. "Evidence of a collateral oral agreement is admissible only if it does not conflict with the written agreement and covers a subject matter distinct from, though closely related to, the express subject matter of the written agreement and is not included in the agreement." Id. at ¶ 22, citing *Bollinger,* 116 Ohio App.3d at 712, 689 N.E.2d 62. Parties may not prove fraud by claiming the inducement to enter into an agreement was a promise that was within the scope of the integrated agreement but ultimately was not included in it. Id.

{¶ 27} According to plaintiffs, the trial court improperly excluded Morelock's and Vicki's testimony concerning representations Morelock made about a sign in front of the restaurant. When the trial court sustained defendants' parol evidence objections, plaintiffs' trial counsel explained that the excluded testimony addressed Morelock's representation to plaintiffs that zoning laws would permit plaintiffs to install the sign in front of the building. In support of its explanation, plaintiffs proffered Vicki's testimony that prior to the parties' entering into the lease, Morelock told them the zoning laws would permit them to install a sign on a concrete island in front of the building.

{¶ 28} Arguing that Morelock fraudulently so stated for the purpose of inducing plaintiffs to enter into the lease, plaintiffs contend that the representations fall outside the restrictions of the parol evidence rule because they do not contradict the terms of the lease. Even if we assume that plaintiffs' contentions are correct, any error in the trial court's decision to exclude Morelock's state-

ments about the sign was harmless, as plaintiffs failed to present sufficient evidence to support their fraudulent-representation claim.

{¶ 29} Before a party may rescind a contract alleged to have been procured through fraudulent representations and recover the consideration paid, the party must prove the fraud by clear and convincing evidence. *Cross v. Ledford* (1954), 161 Ohio St. 469, 475, 53 O.O. 361, 120 N.E.2d 118. In order to establish a claim of fraud under Ohio law, a plaintiff must prove the following elements: (a) a representation or, if a duty to disclose exists, concealment of a fact, (b) that is material to the transaction at issue, (c) made falsely, with knowledge of its falsity or with such utter disregard and recklessness about its truth or falsity that knowledge may be inferred, (d) with the intent to mislead another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury that the reliance proximately causes. *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 73, 23 OBR 200, 491 N.E.2d 1101; see also *Cross* at 475, 53 O.O. 361, 120 N.E.2d 118. Plaintiffs' evidence failed to show that they were justified in relying upon Morelock's representation that the zoning laws allowed plaintiffs to install a sign in front of the restaurant; nor have they demonstrated they suffered any injury.

{¶ 30} To rely on a representation is not enough to prove fraud; a party also must have a justifiable basis to do so. *Columbia Gas Transm. Corp. v. Ogle* (S.D.Ohio 1997), 51 F.Supp.2d 866, 875. An individual has no right to rely on a representation when the actual facts are equally open to both parties. Id. at 875–876. Here, plaintiffs produced no evidence suggesting that they were prevented from independently inquiring into the zoning requirements for placement of a sign in their preferred location. Moreover, plaintiffs did not present evidence of injury. The trial court found that because plaintiffs' gross sales increased every year since the restaurant opened, "[t]here was no evidence presented that Plaintiffs are having financial problems as a result of Defendants." Since plaintiffs did not present sufficient evidence to prevail on their fraudulent-inducement claim related to the sign, any error in excluding the proffered parol evidence is harmless.

{¶ 31} Plaintiffs also assert that the trial court erred in excluding testimony relating to statements Morelock allegedly made concerning the length of time necessary to remodel the premises; the trial court concluded that the evidence was irrelevant and excluded it. Plaintiffs' contention lacks merit.

{¶ 32} Again, even were we to assume that the trial court erred in excluding the testimony, the error would be harmless. The lease is silent on a time frame for completing the remodeling, and plaintiffs introduced no evidence demonstrating that they accepted the lease conditioned upon the remodeling being finished

within a particular time frame. In addition, while plaintiffs contend Morelock's action resulted in a $20,000 cost overrun, plaintiffs' evidence was lacking. According to the record, they incurred $9,000 in labor costs in remodeling the restaurant, the remaining $80,000 in expenses being attributable to materials. Plaintiffs' evidence, however, failed to delineate how those costs increased, if at all, due to Morelock's alleged interference. As a result, even had the trial court considered evidence addressing Morelock's representations about the renovations, plaintiffs' evidence did not support their claim. Plaintiffs' fifth assignment of error is overruled.

{¶ 33} Having overruled plaintiffs' fourth and fifth assignments of error, but having sustained plaintiffs' first assignment of error, and sustained in part and overruled in part plaintiffs' third assignment of error, rendering moot their second assignment of error, we affirm in part and reverse in part the trial court's judgment and remand for further proceedings consistent with this opinion.

<div style="text-align:right">

Judgment affirmed in part
and reversed in part,
and cause remanded.

</div>

MCGRATH, P.J., and BROWN, J., concur.